# American Car & Foundry Company *v.* Altoona & Beech Creek Railroad Company, Appellant.

218   519
41SC¹190
41SC¹472

*Bailment—Sale—Contract—Lease of cars.*

An instrument in writing leasing a number of passenger cars for use on a railway at a stated rental per month with privilege to the lessee to purchase the cars, constitutes a bailment, and not a sale.

*Appeals—Record—Testimony.*

A loose paper not attached to, and not in any way identifying the stenographer's report of the testimony, and not filed in the office of the prothonotary of the court below until after the record and the stenographer's report of the testimony have been removed to the appellate court is not a compliance with the rule of court.

*Appeals—Assignments of error—Evidence.*

An assignment of error to the admission of a writing, which contains no reference to the page of the paper-book where the writing may be found printed, violates rule 31.

Assignments of error to the rejection of papers are defective if the assignments do not contain a copy of the writing rejected.

Argued April 23, 1907.    Appeal, No. 108, Jan. T., 1907, by defendant, from judgment of C. P. Blair Co., March T., 1903, No. 54, on verdict for plaintiff in case of American Car & Foundry Company v. Altoona & Beech Creek Railroad Company.    Before FELL, BROWN, POTTER, ELKIN and STEWART, JJ. Affirmed.

Replevin for six passenger cars.    Before KOOSER, P. J., specially presiding.

The facts are stated in the opinion of the Supreme Court.

*Errors assigned* were various rulings on evidence and instructions.

*Wm. S. Hammond*, for appellant.

*J. S. Leisenring*, with him *Weaver & Drake*, for appellee.

OPINION BY MR. JUSTICE POTTER, June 4, 1907:

The record in this case, as presented to us, is teeming with

irregularities. There is no bill of exceptions, and the testimony is not certified by the judge of the court below, but has the certificate only of the official stenographer. The charge was not included even in that. In the paper-book of appellant, following the assignments of error, a certificate is printed, which is signed by the judge of the court below, which is in the form prescribed by rule 22. But this does not appear to be attached to either the testimony or the charge, or to form any part of the record. It is not noted in the docket entries, and purports to have been filed on a date subsequent to the appeal and removal of the record to this court. A loose paper not attached to, and not in any way identifying the stenographer's report of the testimony, and not filed in the office of the prothonotary of the court below until after the record and the stenographer's report of the testimony have been removed to the appellate court, is not a compliance with the rule: Harris v. Traction Co., 180 Pa. 184; Pool v. White, 171 Pa. 500.

The first assignment violates rule 31, for the reason that the error assigned is to the admission in evidence of a writing, and it contains no reference to the page of the paper-book where that writing may be found printed. It does refer to the page where the testimony of a witness called to prove the contract appears, but the contract itself is printed elsewhere, and that reference is not given.

The second, third, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth and fourteenth assignments, which assign for error the rejection of certain papers and records offered in evidence by appellant, are also defective, for the reason that none of them contains a copy of the writing rejected: Hallock v. Lebanon, 215 Pa. 1. In one instance the writing rejected is not even printed in the paper-book; in several, only a part of the record offered is printed, and in no instance is any reference made in printing the assignments to the page where the rejected writing may be found. The pages referred to are where the offers were made and ruled upon, but the documents or records offered are not set out there.

If we waive the informalities and look at the merits, it appears that during the year 1900 an order was given by the United Collieries Company, a New Jersey corporation of which Samuel P. Langdon was president, to the Jackson & Sharp

Company of Wilmington, Delaware, for six cars which were partly built when, on May 8, 1901, the plant of the Jackson & Sharp Company passed into the hands of the American Car & Foundry Company, by whom it was thereafter owned and operated. The cars ordered by the United Collieries Company were completed after the transfer to the latter company. The agreement had been that they were to be paid for in cash upon delivery at Wilmington, but the purchaser was unable to pay cash, and the manager of the American Car and Foundry Company refused to give possession of them until the cash was paid. Thereupon a new contract was entered into, put in writing and executed by the parties, being the contract of June 12, 1901, by which the cars were leased to the United Collieries Company, with the privilege of purchasing them. The court below construed this contract as constituting a bailment, the title to the cars remaining in the bailor. The cars were shipped by the American Car & Foundry Company to F. G. Patterson at Altoona, and delivered to him on June 16, 1901. Patterson was vice president and general manager of the Pittsburg, Johnstown, Ebensburg & Eastern Railroad Company, and of the Altoona & Beech Creek Terminal Railroad Company, which companies were lessees of the defendant company's railroad and property. One of the plaintiffs' employees testified that the cars were shipped on June 13, 1901, to the United Collieries Company at Altoona. The shipping receipts, which were in evidence, appear to have been lost by the jury, and are therefore not printed in the appendix. But an affidavit of counsel shows that the cars were shipped to the order of the American Car & Foundry Company, and were marked, " Notify F. G. Patterson."

When the cars left the shops at Wilmington there was painted upon the upper outside deck " Altoona & Beech Creek Terminal " or " Altoona & Beech Creek Terminal R. R. Co.," and the same lettering was upon them when they were replevied. There were also upon the cars, when delivered, name plates, one on each side, which were lettered, " American Car & Foundry Company, owner : " " United Collieries Company, lessee." When the cars were returned, they did not have the name plates on, but they showed the marks where the plates had been, and the holes.

On December 27, 1901, acting under a writ of assistance issued by the court of common pleas, the sheriff of Blair county dispossessed the lessees of the railroad, rolling stock and other property covered by the lease, and put the defendant in this case, who was the lessor, into possession of the same. An appeal from the order awarding the writ of assistance was taken to this court, and on May 19, 1902, the order was affirmed: Pittsburg, etc., R. R. Co. v. Altoona, etc., R. R. Co., 203 Pa. 108. Among the cars found by the sheriff upon the railroad, and turned over by him to the lessor, were the six here in question. The uncontradicted testimony showed that no part of the three notes given by the United Collieries Company to the appellee, was ever paid, and that the option to purchase the cars was not exercised. Appellee, therefore, claimed to be the owner of the cars, and upon appellant refusing to surrender them, brought this action of replevin for their recovery. Upon the trial of the case, the court below held that the only question at issue was the title to the cars, and instructed the jury that the written contract was one of bailment, and not of sale, so that by its terms the title remained in the plaintiff ; but he submitted to them the question whether the written agreement contained the real contract of the parties, or the transaction was actually a sale. The amount of damages, if any, to be awarded for detention of the cars, was also submitted to them. The jury found a verdict for the plaintiff, and also awarded $2,432.50 as damages for the detention of the cars. Judgment was entered on the verdict, and defendant appealed.

The defendant alleged that the actual transaction was a sale and purchase of the cars, not by the United Collieries Company, but by Samuel P. Langdon, the Pittsburg, Johnstown, Ebensburg & Eastern Railroad Company, and the Altoona and Beech Creek Terminal Railroad Company, who were lessees of the railroad, rolling stock and other property of the defendant company, and that the contract of bailment was ultra vires, so far as the United Collieries Company was concerned ; and offered evidence for the purpose of showing fraudulent conduct on the part of Langdon, the United Collieries Company, and the two railroad companies towards the defendant company. There was no offer to show that the plaintiff participated in the alleged fraud.

The court below excluded all testimony, except such as bore directly upon the question whether the transaction with plaintiff was a bailment, as purported by the written agreement, or actually a sale, holding that the offer of defendant to show the other alleged matters of defense was irrelevant.  We think that the trial judge was entirely justified in thus confining the issue.  Similar contracts have been regarded as bailments, and not as sales, or conditional sales, in many cases.  It was so in Stiles v. Seaton, 200 Pa. 114, which was a contract for machinery.  In Lippincott v. Scott, 198 Pa. 283, which was for a soda water fountain.  In Crist v. Kleber, 79 Pa. 290, which was for a piano.  In these cases, on failure to perform his part of the agreement by the bailee, it was held that the proper remedy was for the bailor to take possession of the subject of the contract by the process of replevin.  In the case last mentioned, Crist v. Kleber, 79 Pa. 290, we said (p. 292) : " Possession under a mere bailment for hire is not a constructive fraud : otherwise much of the business of men would be ended, and the poorer the bailee the less would be his ability to hire the use of property needful to him."

Whether the United Collieries Company had or had not power to enter into the contract, could have no effect upon the title of the appellee to its cars.  Nor does it appear that appellant was injured in any way by the leasing of the cars.  It did not purchase them from the lessees, or spend any money upon account of them.  It merely received them from the sheriff along with other property included in the lease.  Whatever wrong or injury the appellant may have suffered at the hands of the lessees, and the parties in control of them, can in no way be charged against the appellee in this case.  The lease of the cars into which it entered was an entirely independent transaction, not involved in any way with the relations existing between the appellant and the lessees of its railroad and other properties.

The judgment of the court below is affirmed.